JOHN R. GIBSON, Circuit Judge,
dissenting.
I respectfully dissent. The district court’s careful analysis of the issue of reasonable reliance is based on an accurate and perceptive reading of the record before us, and should be affirmed.
To put this case in perspective, a few statements from the first amended complaint should be considered. The investors alleged that the extraordinary decline in the Fund’s net asset value occurred after the decision of the Federal Reserve Board to tighten monetary policy. This decision resulted in an interest rate increase on fixed income securities with three-to five-year maturities. As interest rates increased, the price of such securities fell, a slow-down in mortgage refinancing occurred, the duration of mortgage securities in the Fund’s portfolio lengthened, and their value decreased. As the price of mortgage securities fell, some investors incurred large losses and sold their holdings. This caused brokerage firms to decrease the value of these types of securities. The investors alleged that these actions affected the Fund more than other funds because of the Fund’s investments in derivatives, such as collateralized mortgage obligations, including floating rate CMO’s, inverse or reverse floating ■ CMO’s, and stripped mortgage-backed. securities of two classes, interest only and principal only. The investors alleged that the Fund’s net asset value declined more than other similar type funds because many short and intermediate term United States government funds did not use a sale forward program and did not have as much exposure to mortgage-backed derivatives.
The district court recognized that the prospectuses specifically described many of the risks, enumerated in the complaint. The court concluded that the investors failed to raise a genuine issue that the total mix of information approved by Peat Marwick was materially misleading.
A statement or omission is considered material if it is one which a reasonable shareholder would, in substantial likelihood, consider important in making an investment decision. TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976); Austin v. Loftsgaarden, 675 F.2d 168, 177 (8th Cir.1982). Whether the misrepresented or omitted fact is material depends on whether a reasonable .investor would regard it as significantly altering the “total mix” of information made available. Id.
Claims of misrepresentation do not lie where defendants adequately warned investors of the specific risks that came to pass. We recognized in Moorhead v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 949 F.2d 243 (8th Cir.1991), that “plaintiffs could not base a federal securities fraud claim on any misrepresentation or omission in the feasibility study which was addressed by the repeated, specific warnings of significant risk factors and the disclosures of underlying factual assumptions.” Id. at 245. When the total mix of information included in a prospectus clearly identifies the very risks that come to pass, courts have held that there is no genuine issue of fact that misrepresentations or omissions are material. See id. Accord Parnes v. Gateway 2000, Inc., 122 F.3d 539, 548 (8th Cir.1997) (discussing “bespeaks caution doctrine”).
In determining reasonable reliance, we have considered the sophistication of the investor. Here, purchases in the Fund required a minimum investment of $25,000. Nine individual plaintiffs alleged they made investments of $100,000, $30,000, $50,000, $102,000, $40,000, $147,000, $300,000, $200,-000, and $50,000, and a non-profit fimd of a union and a non-profit history theater alleged each made investments of $100,000.
The district court carefully analyzed the issue of reasonable reliance:
Examination of the prospectuses of the Fund reveals that they addressed all *1147 of the alleged nondisclosures. Plaintiffs contend defendant failed to warn of: (1) the fact that the, Fund’s investment practices were wholly inconsistent with its investment objectives of preservation of principal and sacrificed safety for yield; (2) the duration or maturity of a substantial portion of the Fund’s portfolio (because the risk involved exceeded that associated with the low average durations disclosed); (3) the risks presented by the Fund’s extensive investment in derivatives; (4) the Funds’s use of leverage and the attendant risks; and (5) the Fund’s prohibition from investing in illiquid derivatives and using leverage.
In fact, the prospectuses and the annual reports clearly communicated that the Fund was investing heavily in derivatives. The prospectuses warned that this could risk loss of principal. With regard to maturity, the prospectuses stated that inverse floating CMO’s were not included in the projected average maturity weight of the Fund’s securities. The prospectuses also warned that “[pjrincipal prepayments on collateral underlying a CMO may cause it to be retired substantially earlier than the stated maturities or final distribution dates,” and that “it is not possible to predict accurately the realized yield or average life of a particular issue of pass-through certificates.” Any misconception that the average maturity weight assured a low risk investment could have been corrected by reading the prospectuses.
Plaintiffs argue that certain practices of the Fund are the equivalent of borrowing money, which was prohibited by the Fund’s restrictions. The problem with this theory is that the prospectuses specifically disclosed these practices and their attendant risks. Most importantly, the prospectuses and reports informed the investor of precisely the kinds of securities in which the Fund invested.
Perhaps plaintiffs’ best argument pertains to the issue of liquidity. Piper Jaffray had other funds which classified derivatives as illiquid investments. The prospectuses of the Fund stated that it would not purchase investments which were not readily marketable. Peat Mar-wick’s audits raised questions about the degree to which derivatives were readily marketable. However, the restriction must be considered as part of the total mix of information provided to the investor. No reasonable pérson reading the prospectuses and the financial reports could conclude that the investment restriction was meant to prohibit investment in derivatives, because these documents all clearly stated that the Fund could and did invest in derivatives.
In analyzing the district cburt’s order, the court today parses the investors’ arguments in a fashion that simply does hot accord with the district court’s conclusions or the nature of the arguments asserted. The court takes issue with the district court’s characterization of “restrictions as general statements trumped by the Fund’s more specific investment disclosures.”
The court, however, refers only to part of the district court order when it states that the district court dealt only with the derivative claim and did not dispose of the borrowing claim. The court states: “[fjorward commitments and dollar rolls are not derivatives ____[Mjore generally, the district court could not resolve the conflict between the Fund’s rules and its investment practices by reading the restrictions out of existence.” It is significant, however, that the prospectus specifically referred to the purchase and sale of securities on a forward, commitment basis, and explained the nature of such a transaction. The prospectus specifically disclosed that if the fund “chooses to dispose of the right to acquire a when-issued security prior to. its acquisition or dispose of its right to deliver or receive against-a forward commitment, it can incur a gain or' loss.” The district court examined this specific language and concluded that the. prospectus “specifically disclosed these practices and their attendant risk.”[1] The court today limits the *1148 reasonable reliance issue to deciding whether there is “a genuine dispute whether some of the Fund’s investments did in fact break its rules.” The appropriate issue, however, is whether the prospectus plainly informed the investors, in the total mix of information, about the practices of the Fund and their attendant risks, and whether the investors were informed of “precisely the kinds of securities in which the Fund invested.” This is the critical issue in the cas.e, and not the substitute issue that the court today proposes.
The court then proceeds to reason that materiality is not assessed after the fact, and that a company subject to the federal securities law could fraudulently induce investments by concealing significant risks and escape liability so long as the disclosed risks come to pass, and that because a hidden risk does not materialize does not mean its concealment cannot hurt investors. The court’s reasoning simply looks beyond the claims asserted in the case before us. The significant risks disclosed in the prospectus did indeed come to pass and cause the investors’ losses.
The district court’s position is similar to that articulated by our brother, Judge Frank J. Magill sitting by designation with the Fourth Circuit, in Banca Cremi S.A. v. Alex. Brown and Sons, Inc., 132 F.3d 1017 (4th Cir.1997). In that case, the Fourth Circuit considered warnings in a prospectus quite similar to those here and concluded that the investors did not justifiably rely on a broker’s alleged omission or misstatement. Id. at 1031. Like the investors in this case, the investors in Banca Cremi were specifically told of the investment practices of the Fund, the specific risks resulting from those practices, and the inherently risky nature of the investment. See id. at 1028-31. Accord Olkey v. Hyperion 1999 Term Trust, Inc., 98 F.3d 2, 5 (2nd Cir.1996) (prospectuses for investment in mortgage-backed securities specifically warned investors of risk of rising interest rates). Here, the district court determined that the prospectuses warned investors of exactly the risk that the investors now claim was not disclosed. A reasonable investor could not have read the prospectuses without realizing that despite the use of balancing, a significant increase in interest rates could decrease the value of the trust and decrease earnings. The prospectuses specifically warned about the consequences of a rise in interest rates. The district court did not err in holding that there was no reasonable reliance.
I would affirm the district court’s grant of summary judgment.

. This conclusion of the district court applies, to the dollar rolls, which the court today characterizes as borrowing.